IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL S. CANDELARIA,

    Plaintiff,

vs.                                                                                  No. CIV 03-166 JC/RHS

JACK POTTER, POSTMASTER GENERAL,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment, filed February 23, 2004 (*Doc. 25*). Having reviewed the motion, the submissions by the parties, and the relevant law, the Court finds the Motion well-taken and it is, therefore, granted.

**I.**    **Background**

Plaintiff filed this action against the Postmaster General on February 4, 2003, alleging Disparate Treatment Based on National Origin (Count I) and Retaliation (Count II), in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et. seq*. Plaintiff now abandons Count I of his complaint, leaving only his retaliation claim for the Court's consideration. Pl's Resp. at 1. The relevant facts are summarized as follows.

Plaintiff has been employed by the United States Postal Service ("USPS") since 1984 and continues to be so employed. From 1993 until 2001 Plaintiff worked in the Stamp Distribution Office ("SDO") of the main USPS plant in Albuquerque, New Mexico as an account papers supply clerk under the supervision of Carolyn Gustafson. An audit conducted on Plaintiff's computer at work in October 2000 indicated that Plaintiff's computer had been used for personal

matters. Plaintiff received a 7-day suspension letter on December 1, 2000 for failure to follow instructions regarding unofficial use of his USPS computer. On December 12, 2000, Gustavson allegedly bumped into Plaintiff and caused him to fall forward into a table at which he was working. Compl. at 4. December 12, 2000 is also the day that Plaintiff initiated grievance procedures alleging Gustavson created a hostile work environment for him. On March 5, 2001 Plaintiff received a 14-day suspension letter for failure to provide his supervisor, Gustavson, with medical documentation for a December 13, 2000 absence from work. Notably, Plaintiff never served either the 7-day or the 14-day suspension and both suspension letters were subsequently removed from Plaintiff's employee file[1].

## II. Legal Standard

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Traditional summary judgment principles are applicable to Title VII cases. *Foster v. Arcata Assoc., Inc.*, 772 F.2d 1453. For purposes of a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party. *Id*. The moving party has the initial burden of showing that there is no genuine issue of material fact. *Id.* at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim, as "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*

---

[1] Neither party develops the record regarding why Plaintiff did not serve the suspensions or the circumstances under which the letters were removed from Plaintiff's file.

*Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986).

Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial.  *Anderson,* 477 U.S. at 248, 256.  To meet this burden, the non-movant must specify evidence in the record and demonstrate the precise manner in which that evidence supports its claims.  *Gross v. Burggraf*, 53 F.3d 1531, 1546 (10th Cir. 1995).  Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment.  *Id.*  If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.  *Matsushita*, 475 U.S. at 597.

**III.** <u>**Discussion**</u>

    A.    *Hostile Work Environment*

Count II of Plaintiff's Complaint alleges that "[b]ecause [Plaintiff] engaged in protected activity, Gustavson increased the severity of the hostile work environment and took adverse employment actions against [Plaintiff]."  Compl. at 7.  Title VII of the Civil Rights Act makes it unlawful for an employer to discriminate against an employee because that employee has opposed an unlawful employment practice and creation of a hostile work environment is actionable under Title VII.   42 U.S.C. § 2000e; *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1264 (10th Cir. 1998).  The standards for determining whether a hostile work environment exists, however, are not intended as a general civility code encompassing normal job stress and ordinary tribulations of the workplace.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

3

That said, it is unnecessary for the Court to analyze Plaintiff's hostile work environment allegation in detail, for insofar as Plaintiff's Count II alleges worsening of an already-hostile environment, Plaintiff abandoned the claim that Gustavson created a hostile work environment based on his race for lack of supporting evidence. ("The evidence of record does not support the national origin claim and this response will center on the retaliation claim.") Resp. at 1. Thus, Plaintiff has no legitimate claim that any such environment subsequently "worsened" as a result of his EEOC activity. Nor did Plaintiff properly plead a cause of action alleging retaliatory hostile work environment or administratively exhaust any such claim.[2] Therefore, the only remaining claim before the Court for consideration on summary judgment is adverse employment action allegedly taken in retaliation for Plaintiff's EEOC activity, as discussed below.

B.      *Retaliation*

Retaliation is a separate discriminatory offense under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e *et seq*. and is analyzed under the *McDonnell Douglas* burden-shifting framework. See *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1212 (10th Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03, 36 L. Ed. 2d 668 (1973)). To establish a prima facie case of retaliation, Plaintiff must show that (1) he engaged in protected activity; (2) he was subsequently subjected to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action he suffered. *Wells v. Colo. Dept. of Transp.*, 325 F.3d 1205, 1212 (10th Cir. 2003). If Plaintiff makes a proper

---

[2]Plaintiff's failure to exhaust this claim administratively would divest the Court of jurisdiction even if it were properly plead, as administrative exhaustion is a jurisdictional prerequisite to initiating a Title VII action in federal court. *Khader v. Aspen*, 1 F.3d 968, 970 (10th Cir. 1993).

prima facie showing, Defendant must then articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* The burden then shifts back to Plaintiff to respond by demonstrating that Defendant's proffered reasons for the adverse action are pretextual. Id.

Protected opposition under the first element of a prima facie case can range from filing formal charges to voicing informal complaints to superiors. *Id.* Plaintiff has met his burden on this first element, as it goes undisputed that Plaintiff initiated protected EEOC activity on December 12, 2000.

Next, Plaintiff bears the burden of showing evidence supporting the existence of adverse employment action. Because the claim is for retaliation, only activity taking place after Plaintiff's initial EEOC activity on December 12, 2000 can properly be considered, as there is no allegation or evidence of actionable pre-emptive retaliation. In that vein, Plaintiff has offered evidence that he received a 14-day suspension letter on February 24, 2001, purportedly resulting from an unexcused absence from work on December 13, 2000. That letter constitutes the only employment action that might be considered "adverse."

The Tenth Circuit takes a case-by-case approach to determining whether any employment action is adverse for purposes of a retaliation claim. *Corneveaux v. CUNA Mut. Ins. Group*, 76 F.3d 1498, 1507 (10th Cir. 1996). Because Title VII is remedial legislation, a liberal approach to defining adverse employment action is taken. *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996). Unrealized threats, however, have been held not to rise to the level of actionable retaliation. *See, e.g., Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1381 (10th Cir. 1994) (declining to find adverse employment action where no evidence that threat of more frequent evaluations of a teacher was carried out). In this case, because the threat of a 14-day suspension

5

was not carried out, the letter was not made a part of Plaintiff's permanent personnel file, and there is no evidence that Plaintiff otherwise suffered adverse consequences at work, the Court declines to find that receipt of the letter alone rises to the level of adverse employment action under existing TitleVII jurisprudence.[3]

The third element of retaliation is the requisite causal link between the protected activity and alleged adverse employment action. Here, again, Plaintiff falls short of meeting his burden. Assuming Plaintiff were successful on the second element, which the Court finds he is not, he cannot show a causal connection between the suspension letter he received and his EEOC activity. Plaintiff has successfully discredited Gustavson's original assertion in her affidavit that she did not become aware of Plaintiff's EEOC activity until approximately eight months after the 14-day suspension letter was issued by offering evidence of Gustavson's participation in mediation regarding his protected activity on February 7, 2001.[4] However, the record shows that the 14-day suspension procedures had already begun prior to the mediation and further that approval for the decision to suspend Plaintiff was given by Henry Binon, who undisputedly had no knowledge of Plaintiff's protected activity when he approved the suspension. Gustavson 2nd

---

[3]After initiating EEOC activity, Plaintiff was transferred out of Gustavson's supervision to that of another individual within USPS. A showing of adverse employment action has been found where a plaintiff was reassigned against her wishes. *Sauers v. Salt Lake County*, 1 F.3d 1122, 1128. Plaintiff in this case, however, does not advance any similar argument or develop the record on this point for the Court to consider. Similarly, Plaintiff has not developed any record regarding possible humiliation or damage to his reputation as a result of receiving the letter, both possible grounds for a finding of adverse action under *Berry v. Stevinson Chevrolet*, 74 F.3d at 986-87.

[4]Defendant admits Gustavson's misstatement in her affidavit and asserts that it was made inadvertently, rather than as a "false affidavit" and "misrepresentation," as Plaintiff characterizes it. Resp. at 3.

Decl., Ex F. The record evidence does not establish the temporal proximity necessary to support a finding that the disciplinary notice came as a result of Plaintiff engaging in protected activity.

Finally, assuming, *arguendo*, that Plaintiff had established a prima facie case of retaliation, Defendant claims the suspension notice came as a result of Plaintiff's failure to follow his supervisor's instructions. Specifically, when Plaintiff called in sick on December 13, 2000, Gustavson told him he would need to provide medical documentation for his entire absence. Plaintiff returned to work on December 20, 2000. Plaintiff provided a note from his doctor covering December 14 through December 20, 2000[5]. The note did not include Plaintiff's absence for the date of December 13, 2000. Gustavson gave Plaintiff until December 22, 2000 to provide documentation of his December 13, 2000 medical absence and Plaintiff again failed to provide it on time. In fact, Plaintiff admits his failure to follow Gustavson's instruction regarding documentation for his medical absence. Failure to provide documentation as instructed forms the basis of Defendant's proffered justification for issuing Plaintiff the suspension letter.

In light of this proffered legitimate reason for Gustavson's action, the burden shifts back to Plaintiff to provide competent evidence from which a reasonable fact-finder might at least infer that such reason is pretextual. Plaintiff offers no evidence of pretext save his own subjective belief, which, standing alone, is insufficient to resist summary judgment. *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

---

[5]Plaintiff refers to the original note as covering December 12 through December 20, 2000, which is obviously inaccurate, for if the note covered that time frame, there would be no issue regarding December 13. The Court takes this opportunity to note that this is but one of the many inconsistencies and errors contained in the pleadings in this case.

## IV.     Conclusion

In summary, the Court finds that Plaintiff had abandoned Count I of his Complaint and it is, therefore, dismissed with prejudice.  The Court further finds that Plaintiff has failed to establish a prima facie case of retaliation because he has not shown that he suffered any adverse employment action.  Moreover, the Court finds that even if receipt of the 14-day suspension letter would suffice as adverse action, Plaintiff also fails to establish a genuine issue of material fact that there is a causal link between his EEOC activity and delivery of the 14-day suspension letter. Finally, assuming Plaintiff had been able to establish a prima facie case of actionable retaliation, he offers insufficient evidence to establish a genuine dispute regarding whether Defendant's proffered reason for the suspension letter was mere pretext.  Therefore, Defendant's Motion for Summary Judgment, filed February 23, 2004 (*Doc. 25*) is granted.

Wherefore,

**IT IS ORDERED** that Count I of Plaintiff's Complaint is dismissed with prejudice.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment, filed February 23, 2004 (*Doc. 25*) is granted and Count II of Plaintiff's Complaint is dismissed with prejudice.

DATED June 15, 2004.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:

    Michael E. Mozes, Esq.

    Albuquerque, New Mexico


Attorney for Defendant:

    Cynthia L. Weisman, AUSA

    U.S. Attorney's Office